Hillsborough,
No. 5453.

THE NEW HAMPSHIRE CHILDREN'S AID SOCIETY

*v.*

ASA H. MORGAN *& a.*

Argued March 1, 1966.
Decided June 30, 1966.

*McLane, Carleton, Graf, Greene & Brown* and *John T. Franklin* ( *Mr. Franklin* orally ), for the plaintiff.

*G. Wells Anderson*, county attorney ( by brief and orally ), for the defendant county commissioners of Merrimack county.

*Upton, Sanders & Upton* ( *Mr. Gilbert Upton* orally ), for the defendant town of Loudon.

*William W. Treat* and *Robert G. Tetler* ( *Mr. Tetler* orally ), for the defendant town of North Hampton.

*Alvin E. Taylor*, county attorney ( by brief and orally ), for the defendant county commissioners of Rockingham county.

*Hall, Zellers, Morse & Gallagher* ( *Mr. Charles T. Gallagher* orally ), for the defendant town of Dunbarton.

*George R. Scammon* and *Robert G. Whitman* ( *Mr. Whitman* orally ), for the defendant town of Exeter.

PER CURIAM. The plaintiff, a private charitable corporation, expended from December 10, 1957 to May 1, 1965 for the support and care of two minor children, John F. Bailey, Jr. and Thomas Bailey, the sum of $10,903.11. It voluntarily assumed the custody and care of these children by agreement with their father, John F. Bailey, entered into on November 7, 1957. The children then resided with their parents in Exeter, but the parents were divorced in January 1958, and the mother thereafter removed to Massachusetts. Custody of the children was granted by the Superior Court to the father, who continued to reside in Exeter until 1960 when he removed to Newfields, and later to Newburyport, Massachusetts.

In 1957, the plaintiff placed the children, then aged ten and seven respectively, in a foster home in Barrington, where they remained until January 1958. They were then transferred to a home in Dunbarton, where they lived until May 4, 1962. From Dunbarton they went to Loudon on May 4, 1962. The older child John remained there when this petition was filed on March 3, 1964. On February 2, 1965, the children were separated by transferring the younger boy, Thomas, to a home in North Hampton.

The plaintiff seeks reimbursement from the towns of Exeter, Dunbarton, Loudon and North Hampton, and the counties of Rockingham and Merrimack, for the sums heretofore expended for the support and care of the children, and an order requiring the appropriate municipality or municipalities to assume the future expense of such support.

It is not disputed that the father John F. Bailey had a settlement in Exeter at the time the plaintiff assumed responsibility for the children. Exeter contributed to the support of the children by payment to the plaintiff from April 1958 to April 1959, at the request of the father, because he was unemployed. Upon his resumption of employment, the payments were stopped.

The father removed from Exeter on April 24, 1960, so that his settlement there terminated five years later, on April 24, 1965.

RSA 164:2; *Manchester* v. *Hillsborough,* 100 N. H. 79. By statute, the settlement of the children was that of their father (RSA 164:1 III) and thus their support became the responsibility of Exeter, until such time as their settlement there was lost by the father's abandonment of his domicile there. *Manchester* v. *Hillsborough, supra.*

During the period when the children resided in the towns of Barrington, Dunbarton, Loudon, and North Hampton, the plaintiff sought no assistance for them from these towns, and none was given. See RSA 165:1. If assistance had been given by these towns, it would have been recoverable by them from Exeter, where the children had their settlement, by pursuit of the applicable statutory procedure. RSA 165:20; *Wolfeboro* v. *Milton,* 103 N. H. 174; *Ebelt* v. *Ebelt,* 103 N. H. 369.

It is settled law in this jurisdiction that the obligation of a town or county to support the poor is wholly statutory. *Wilson* v. *County,* 72 N. H. 112; *Manchester* v. *Hillsborough,* 100 N. H. 79, 81; *Merrimack* v. *Derry,* 107 N. H. 212. We find no statutory provision by which the plaintiff is entitled to recover from any of the defendant towns or counties its past expenditures made on behalf of these children. Liability for future expense depends entirely upon whether the towns where the children presently reside are called upon to furnish assistance under RSA 165:1, *supra,* with a right to recover over from the appropriate county. RSA 166:3, 4. *Strafford County* v. *Rockingham County,* 71 N. H. 37.

The plaintiff seeks to recover upon the authority of *Barry* v. *Carroll,* 98 N. H. 290. It was there held that the Commissioner of Public Welfare to whom the custody of minor children had been granted under RSA 458:18 might require that the expense of their support be borne by the county or town "legally chargeable for its support if it were a public charge" under what is now RSA 167:52. The application of these provisions is restricted however to support of "dependent and neglected children" (RSA 167:50) responsibility for whom rests upon the Director of the Division of Public Welfare.

The plaintiff recognizes that legal relief is not afforded to private individuals who volunteer assistance to persons claimed to be entitled to public relief. *Otis* v. *Strafford,* 10 N. H. 352; *French* v. *Benton,* 44 N. H. 28; *Buxton* v. *Chesterfield,* 60 N. H. 357.

It argues however that its rights should not be governed by

considerations advanced by these cases, because it is a charitable corporation, and because the Legislature has specifically authorized it to apply for appointments of guardians of minors, and to act as such. RSA 463:6, 9. No statutory provision however appears to entitle it to relief under RSA 167:52, *supra*, on account of homes procured by it for children in its custody ( *cf.* RSA 167:51 ) and the provisions of RSA 165:1, *supra*, may not be invoked to compel a municipality to reimburse a volunteer for past expenses incurred without notice to or the consent of the municipality sought to be charged. *Otis* v. *Strafford, supra*, 10 N. H. 352, 354. See *Wolfeboro* v. *Milton*, 103 N. H. 174, *supra*; *Memorial Hospital* v. *Carroll County*, 107 N. H. 43; *Merrimack* v. *Derry,* 107 N. H. 212.

It is evident that the ultimate responsibility for the future support of the minors in question rests upon the counties where they reside when aid is required. See RSA 166:1, 10; *Belknap County* v. *Carroll County*, 91 N. H. 36. There is no reason to suppose that the counties will fail to recognize the duties imposed upon them by statute should the plaintiff discontinue the support which it has heretofore provided, or should either child be committed to the custody of the Director of the Division of Welfare under the provisions of RSA ch. 169, or other applicable provision. See RSA 161:2 II; RSA 458:17. The question of whether mandamus should be used to enforce against the counties any current obligations for support of the children in question rests in the discretion of the Superior Court, should the plaintiff withdraw its support. See *Goodell* v. *Woodbury*, 71 N. H. 378, 381.

The petition should be dismissed as to all defendants except the defendant counties.

In 1961 we noted that under existing statutes the determination of a " . . . legal settlement and the consequent liability of a particular town or county at times have presented sticky problems which have not been always settled with dispatch. " *Ebelt* v. *Ebelt*, 103 N. H. 369, 371. Historically it is interesting to note that this is not an entirely modern observation concerning our technical settlement statutes which are based on the Elizabethan Poor Laws. Almost a century and a half ago, Judge *Levi Woodbury* in a report to the Legislature of New Hampshire, dated June 9, 1821, recommended the " repeal of all laws in respect to settlement " and the possibility of reducing expense and delay " by the organization of a cheaper tribunal than courts of law to

adjudicate upon pauper questions." 1 Writings of Levi Woodbury, 477, 484, 485 ( 1852 ). In that report the difficulty and expense of administering our settlement statutes was summarized in the following language: " time, trouble and expenditures, of overseers and agents, in inquiries concerning the settlement of paupers, — in the relief, removal and superintendence of them, — in the institution of suits, the service of notices, the procurement of evidence, the fees of counsel and witnesses, — the attendance on courts and the raising of money to discharge enormous bills of cost recovered. " *Id.*, *pp*. 481 - 482. Perhaps this matter will now receive consideration in the light of modern conditions in view of the appropriation of money " for an interim study of the settlement laws." Laws 1965, 239:1, *p*. 289, footnote and 1965, 282:1, *p*. 458, footnote.

*Remanded.*

LAMPRON, J., did not sit.